The case for argument this morning is 14-5050, SRA International v. United States, Mr. Shio. Is that the way you pronounce it? Yes, ma'am. Thank you. May it please the Court. Today, CSC is performing a contract worth $360-plus million that is essential to the operations of the FDIC. SRA has made five non-frivolous allegations that performance of that contract violates law and regulation. All of which deal with the conflict waiver? Not with the conflict waiver. They all arise, Your Honor, and are related to, I would say, the waiver of conflicts of interest. But, as we've made clear in our papers, it's not simply a FAR OCI waiver that's been issued here. This case is unique. There are separate and unique requirements of FDIC statute and regulation incorporated into the solicitation in two ways. And they apply because they apply by virtue of law and regulation. Can I ask you this sort of maybe simple-minded or maybe not too simple-minded question? Your stake in all of your challenges is you don't want CSC to be performing the task order. You want to be performing the task order. If that's the case, and I don't understand how it's not, how is this not squarely covered by the jurisdictional limit of the FAFSA? Well, Your Honor, we have to look to what Congress said. And Congress used very clear language when it chose to write the FAFSA jurisdictional bar. It said that protests are not authorized in connection with the issuance or proposed issuance of a task order. And the choice to use those words, issuance or proposed issuance, we must assume was intentional. And so what it could have said, what Congress might have said, is there can be no bid protest in connection with a task order. That would lead to the result that the government seeks here. But we have to give meaning. But why isn't this essentially a parallel to the language of 1491B, the CFC jurisdictional provision, which talks about, I forget what the exact language is, the proposed award or the award, that issuance or proposed issuance I would think naturally actually conveys yet to be awarded or after awarded, since you don't challenge the issuance until there is an issuance to challenge. So, I mean, in our papers, Your Honor, we've talked about the statutory language. It's only the second prong of Tucker Act jurisdiction that really aligns with the jurisdictional bar. You know, issuance or proposed issuance of a task order, that's FASA, and then the award or proposed award of a contract, that's the second prong of Tucker Act jurisdiction. But there's an entire third prong that this Court and Ram Corps said, this creates a broad jurisdictional grant that covers the entire long arc of the life of a procurement. So Ram Corps says that there are these protest issues that are in connection with a procurement, third prong of Tucker Act jurisdiction, but not associated with the issuance of the award, the award decision. So in that case, it was a CICA override decision. And I think it's clear from the congressional… I'm sorry, that's not an acronym I'm getting. I'm sorry. Which CICA override. Sorry, Your Honor. So the requirements of the Competition and Contracting Act say that when a protest… Competition and Contracting Act. When a protest is filed, that there shall be a stay of the award. And in several of the cases in the Court of Federal Claims that have gotten close to answering this question on FASA or have answered this question on FASA, there's probably more than a dozen cases at the Court of Federal Claims that have dealt with it. And what they've said is, well, clearly, if the government's going to make this after award decision, after award, they're going to make a decision, completely discretionary, not necessary to the issuance of the award. If they're going to make that determination, it's fully within the rights of a party with standing to go to the Court of Federal Claims and try to stop that action. Even if the consequence of stopping it would be to undo the issuance of the award? I don't think… Certainly not. We've not had any such case. Your Honor, any party that has standing, the consequence of their action is going to be to try to disrupt a contract that has been awarded. That's the whole… So as long as the standing… Well, except one of the cases is a distributed… Distributed solution trial. …which is the case that you feature most, even though we didn't discuss the FASA, except maybe implicitly in denying rehearing or something. But that… Am I remembering right? That's the one in which what was being sought was to change a subcontractor but not to undo the basic task order. What the court did in distributed… This court did in distributed solutions, Your Honor, and I think it's very interesting if you listen to oral argument in that case and the government's arguments there. In their briefs, they say it sort of came up in oral argument. It was part and parcel of their argument in oral argument in distributed solutions was FASA bars this action. And then they filed a motion for… But focus… Maybe I didn't emphasize enough the part of my question that I really wanted to be focused on. Yes, Your Honor. What was at stake there was not undoing the task order award but rather changing some feature of its implementation having to do with a subcontractor. Am I remembering that right? So the basic facts of distributed solutions are that a contractor had a task order and the government sent out an RFP and it wanted to get these services. And it decided after it went out and tried to get these services through what this court said was a procurement. It went out and sought services. It said, you know what, we've got this task order sitting here. Let's just use that. So a task order was absolutely implicated. It was a task order but it had been issued. So since that task order had been issued, there's no way to say that there was no task order at issue. In that case, it was very similar to this. Task order had been issued and notwithstanding the fact that that was implicated… Would the challenge in that case, if the court agreed with it on its merits, have led to the undoing of the task order award? It would have led to the movement of work. In fact, it did lead to the decision that they could not do work under that task order. They must go out and follow the obligations under SECA, Competition Contracting Act, and have a separate procurement to get those services. So I think it's pretty close. We're not saying that Distributed Solutions answers the question. We're saying it's as close as you get, and the government has run away from that opinion all along because there was a task order. It had been issued. And the government's view, it says… Remember, it reads out the words, issuance or proposed issuance. So what the government would have us believe in CSC is that as soon as there is any nexus to a task order, no matter the life of it, there can never be a protest. But we're saying… I want to interrupt you to make sure that I understand. Is it correct that you're not challenging that this procurement, I'll call it, was properly obtained by something called a task order? That's correct. But that it could have been done, since it's a follow-on contract of something that previously existed, that it could have been done through some other system, through the generalized system of procurement, except that the piece of paper called it task order instead of something else? I mean, that's not the circumstances of our case. That, I think, is what happened in distributed solutions. But wouldn't that difference make a giant difference in the issues that you're complaining about in terms of review of whether there was or wasn't an excusable or waivable conflict of interest? I think, Your Honor, what we have to do, and the reason we fall outside of the FAFSA bar on task order jurisdiction, is that we know, in many decisions below, the data mill opinion cited extensively by the government, the Global Computer Electronics decision, Bayfirst Solutions, Morey, there are several cases that say you have to examine the connectedness of any challenged action to the issuance or proposed issuance of a task order. And so there's lots of things you can look at. One of the key things is temporal. And you can say, to the extent the award has already been issued, you cannot say that there's a causal connection to the issuance of the award. That's a government decision that's been made. But if you accept that this is a task order and that it's subject to the statutory path of review for task orders, then you really have to persuade that some aspects of the award are subject to a different path of review and explain why that line should be drawn. Yes, Your Honor. It's hard to find that explanation. Yes, Your Honor. So the way that we try to make that explanation is we say, okay, we have an action. And it was a government action that occurred 102 days after award. It didn't have to happen. It was not, as the court below said in this case, it was not necessary to the issuance of the award. And it was fully discretionary. The government had no – they could have chosen not to do that, waited to see what happened. That's the waiver of the conflict of interest in November 2000, whatever it is. Yes, and procedurally, Your Honor, that's exactly the same thing that happens in a SECA waiver, which was the – But that could have – I mean, that was in your control as to when to bring the allegation with respect to the conflict, right? So if you had brought it before the issuance of the task order rather than after and it had been decided in the GSA's discretion before that time, would you concede that you wouldn't have a cause of action here? Yes, Chief Judge Prost. If we actually had known, I want to correct the facts and say that we did not know of the OCI. The government makes a lot – that's actually CSC. I'm not sure I said that. I didn't mean to say that. But if you had brought the action before, hypothetically, if you had known and brought it before the issuance rather than after, the exact same circumstances, conflict and GSA waived it, if that had been done beforehand, you would concede that that would come under FASTA, right? I think that's true, Your Honor, in the typical case, but this is not the typical case. If I could pull out the regulations to the FDIC, and they have specific and continuing obligations that exist after award. So let me make sure I've answered your question, Chief Judge Prost. So if there were an actual OCI waiver that we knew about before the issuance of the award and we had attacked it, I think that that pretty clearly would fall within the FASTA part, but that wasn't the circumstance here and we actually couldn't have known about the OCI circumstances here. It wasn't until actually during – after the award had been made and the government went to these extensive efforts to try to preserve the award, not issue an award, protect the contract. That's what they were trying to do. It was only then that we learned not only that there was a conflict of interest, but that there was a false certification that it didn't exist. There's evidence, very clear evidence. But this all happened long before the task order was issued, right? But the government's decisions all took place after award. The contracting officer makes clear time and again throughout the record that he did not know of any OCI. No one had made him aware of that prior to the award decision. So his award decision wasn't – So we're supposed to construe the statute, so the distinguishing factor here is something happened before the issuance of the task order and because you didn't know about it or because GSA didn't act until after you called it to attention afterwards, that's the determining factor as to whether or not that's the language in connection with the issuance of FASTA? No. The distinguishing feature, Your Honor, is that this is a – that there was a determination – we have five claims and several of them depend upon FDIC law and regulation. The FDIC regulation says that there's a continuing obligation for the FDIC to ensure that its contractors proceed with integrity. It's by statute. It's by its own regulations and they apply. And so if we look at 12 CFR 366.12, the following are examples when you're engaging in unethical behavior. Submitting false invoices or claims or making false or misleading statements. So we say that happened. They falsified this OCI certification. And then we know at 12 – And that all happened prior to the issuance of the task order. And your view is that that unduly influenced. I mean, the reason you're here is that corrupted the issuance process and you're seeking to overturn it to change its effect, right? I think that may be a fair characterization of some of our claims, but not all of our claims because, as I'll read to Your Honor – Which one doesn't – which one? There's a continuing obligation under FDIC regulation to determine if this part, these OCI and integrity regulations, prohibit you from performing services prior to contract award, after contract award, and during the performance of a contract. So we have demonstrated through – We have claimed that there's a violation of that regulation. That, in fact, after there's been an award, there's a continuing obligation of the FDIC to examine that. FDIC has never taken that opportunity. Now, if the FDIC violates its own regulations, set aside the fact that there is something called a task order here, what is the path of review of such violations? Is it the district court? Prior to the issuance of ADRA, I think it would have been the district court. However, because ADRA, in 1996, transferred all of the ScanWell jurisdiction for bid protests that existed in district courts to the Court of Federal Claims – That's – I was trying to remove the context of the bid protests and that there's something else that's gone wrong with the FDIC violating its own regulations. Is that standard APA review? As I look at the – as I read the very clear language of ADRA and the Tucker Act jurisdiction under 1490B1, as interpreted by this court in RAMCOR, which recognized this third prong of violations and distributed solutions, which said it reaches the entire arc of the life of procurement, I think that would be dismissed in district court. I think the claims that we allege are in connection with a procurement. It happens to be a task order procurement. And Congress said it wanted to get rid of those task order bid protests. If they involved that narrow sliver of issuance or proposed issuance, it didn't want those around. But in its own language to support – in the legislative history, it said very clearly that all other application – applicable laws and regulations should still be enforced. And this is the – the Court of Federal Claims, Your Honor, I think is the only court that can hear those claims if they are in connection with a procurement or proposed procurement. So you've answered my question in the context of a procurement, but that's a much more difficult hurdle for you to overcome, is it not, in view of the statute assigning task order issuance – issues. Your Honor, if – the only argument that the government makes that ADRA – the bar in ADRA is coextensive with the broad jurisdiction – or sorry, the bar in FASA is coextensive with the broad jurisdiction in FASA is the words in connection with. Those words in and of themselves have no meaning. I collect souvenirs in connection with sports. I do not collect autographs in connection with baseball. The first one says I have this very broad collection. The second one says there are these little things that I don't do. And that's a very natural reading. So in order to – in order to honor all of the canons of construction that this court applies in its normal role of statutory interpretation, I don't think you can ignore that the Congress deliberately chose two years apart. They issued these statutes two years apart. In one, it chose to say there shall be protest jurisdiction essentially for pre-award protests, for protests of typical bid protests, and everything else in connection with the procurement. And then separately said, but there's not task – there's not jurisdiction in connection with the issuance or proposed issuance of an award. Are they saying there's not jurisdiction or there's no review? There shall be no – Anywhere, in any court. Well, there is review in GAO of task order bid protest in connection with the issuance or proposed issuance of a task order by a statutory change that came later, Your Honor. That's in the agency. There's no review in any court? There is GAO review, Your Honor, if the task order value is greater than $10 million. But that's a statutory change that came later, Your Honor. So – and I think that's interesting that Congress said, we have this statute, and it gives this broad jurisdiction. We're going to carve out a narrow piece. But in fact, we're worried that people are going to get $365 million contracts and there's no review of violations of law or regulations. That's what the government would say. The government would say, even though there's a $365 million contract on the table, even though there are five non-frivolous allegations of violation of law or regulation, all of which are premised upon agency actions that were after the award had already been issued, that there can never be a court that can hear that. Why don't we hear from the other side? Will we secure two minutes to do that? Yes, Your Honor. Mr. Major. Mr. Major, at this threshold, I'm really searching for an answer to the question as to when a $360 million procurement is done by task order, unreviewable, and when it goes through the procurement process. And with judicial review. Well, I mean, a $360 million task order is reviewable by the Court of Federal Claims if that task order changes, ultimately, the scope or the value or the period of award of the underlying IDIQ contract. In other words, if it deviates from the contract, which was fully protestable, that has been awarded to the various task order holders. Yes. However... That actually is in the statute. But here we have a question of a violation of the ethical rules and so on, which we're told is not reviewable, which the Court of Federal Claims felt that they could not reach because of the statute. Because the procurement is called a task order rather than a procurement, it seems to be a curious line to not only to justify but to administer. Well, it's the exact system that Congress set up with the Federal Acquisition Streamlining Act. They did provide for review at GAO if it's over $10 million. There's nothing really to show that Congress considered the implications, the nuances, the sequence of what might occur, or that when they set the $10 million floor that they had an unlimited ceiling. Well, Congress did have a clear idea. They've altered and changed the Federal Acquisition Streamlining Act significantly in 2008 to provide GAO with jurisdiction to review task orders in excess of $10 million. And then in 2011 and 2012, they again have a sunset within their provisions of the regulation. And in 2011, parts of the FAFSA statute had lapsed. So it streamlines by making it unreviewable? Yes. I suppose that would streamline anything. And it's all sorts of illicit that take place, as we're told here. We don't know the truth or falsity of it. It's also unreviewable, we're told. Your Honor, it's unreviewable in court. There are mechanisms which they've set up. Again, GAO review is one mechanism. They also have the Ombudsman. GAO said, don't bother me. We waive it. We waive any conflict. And they have the Ombudsman, who they can also go before. So those issues, there are methods of review. There are limited methods of judicial review. That's correct. That's what the Federal Acquisition Streamlining Act does. You can challenge the overarching IDIQ contract. Yes. You can challenge certain problems with task orders that Congress has allowed you to go into court, like the Court of Federal Claims for. But otherwise, if it's in excess of $10 million, can you go before GAO? And there are task orders which are effectively, unless they change the scope value or period, which are unreviewable, even at GAO, those below $10 million. I mean, there are certain procedures Congress has built in at various points in the Federal Acquisition Streamlining Act. In certain cases, task orders don't even have to be competing. It has to be over $5 million to have what's known as sort of enhanced competitive procedures. Speaking of unreviewability, just moving to another area, which is just the waiver of the conflict, GSA, I mean, which is the underlying allegation here, GSA has enormous discretion, does it not, under the provisions on that question as well? The organizational conflict of interest regulations, which were promulgated in the Federal Acquisition Regulations, do provide enormous discretion in determining the waiver, and ultimately dealing with organizational conflicts of interest as a general matter. There are some... So what is the review limited to in connection with those kinds of conflict decisions by GSA? Well, as a general matter, it's determining whether the court acted in an arbitrary and capricious basis, whether or not ultimately the OCI allegation waiver is not supported by, you know, typically what we'd be viewing in a big protest. We've had protests of OCIs. Setting aside the task order issues, we've had protests of OCIs before the Court of Federal Claims, and the agencies do have significant discretion. Now, they also, you know, there are limitations upon that because the agency still needs to act reasonably, rationally, in accordance with the law in waiving an OCI. If you do a waiver and... Well, there are a number of circumstances in which the Court of Federal Claims would be able to review an OCI, again, absent the task order issues. Can I just follow up on something I think that Judge Newman was concentrating on? Perhaps the organizational conflict of interest at issue here is less egregious than, say, bribery or something. Is it your position that if there were something as dreadful as bribery in deciding to pick in the competition on the task order, still, you know, for $350 million, still there's no judicial review? I mean, I would say that would give rise to other sorts of claims, but, you know... Like what? I mean, the problem is the OCI rate, actually, there was a question with regards to OCIs of whether, this is about 2011, there was a question of whether OCIs should be treated as though claims such as bribery. Ultimately, because it was a question of contractor responsiveness, FAR Point Part 9 deals with questions of contractor responsibility, things you determine at the outset of award. It could include things up to the level of debarment. The OCI regulations are part of that initial determination, FAR Part 9. I guess I'm just trying to understand... Sorry, I was getting to it. No, no, the consequences of reading FASA the way you do. Are we talking about the absence of any judicial review through any mechanism, whether it's in the Court of Federal Claims or anything else, for the most egregious kind of misconduct in the choice of A over B in awarding a task order? In the Court of Federal Claims, there may be other ways to get it, but yes, I mean, you can't directly challenge the task order that way. Is there any other way in the Court of Federal Claims? Is there any other way in any other federal court? Whether criminal actions, we assume that the government acts in good faith, and if they determine that a task order is between bribery, an agency could always terminate the task order itself under its own... I would find it easier to give FASA the pretty straightforward reading that you're arguing for if I had some concrete sense of what the alternative judicial remedies are for egregious misconduct, and at least what I'm hearing is you haven't identified one yet. The statute doesn't distinguish between the egregiousness of the conduct. It doesn't distinguish between the nature of the conduct. It's just whether it's connected to issues of the task order. Now, if you have a case where you could sever that connection, the hypotheticals you're offering, it seems as though it is connected. So... So you're saying that since the statute doesn't distinguish, neither should we, and on the, let's say, hypothetical position that the conflict of interest was indeed egregious and that the waiver or whatever did not cure the flaw. The government's position is that that must be tolerated and can't be reviewed in any court because the statute doesn't draw a distinction? The task order can't be protested. Obviously, bribery charges could be brought. There are other mechanisms to deal with. Protested where? Not in the Court of Federal Claims. No, not in the Court of Federal Claims. And not in the district court. And... What else is there? You could proceed before GAO in certain instances. You could bring criminal charges, hopefully, in the instance of bribery would ultimately be brought. You're saying the agency reviews the agency. This is still in the administrative on the purpose of judicial review as a check and balance, as you know. A contractor might be subsequently debarred, suspended for such actions. I mean, there would be significant consequences. But with regards to the particular task order, that would be left to the government to act in good faith and ultimately resolve the situation. So the Court of Federal Claims must decide how serious the infraction may be. And if it's something that's waivable, like a conflict of interest that's partially cured, however, whatever action was taken, that's not serious enough. But if it were worse, then the Court of Federal Claims has jurisdiction. No, no. That's not our position. I mean, the Court doesn't determine how serious it is. It determines whether it's connected to the issuance of a task order. No, I'm interested in your position. Where is the boundary, even a fuzzy one? Well, I'm saying that it's whether it's connected. So, I mean, those allegations, the boundary is that if we're dealing with the issuance of a task order, the Court of Federal Claims does not possess jurisdiction to review it. I mean, I apologize if that seems fuzzy, but it's a pretty bright and solid one. Who reviews it? They review it themselves. The issuance of a task order, in certain cases, can be reviewed by GAO. It can be reviewed by the Ombudsman. Those are the methods specifically set forth by Congress in the statute, but not a court. So there's no judicial review? No, there is no judicial review. That's correct. It's hard to find in the legislative history of this enactment so sweeping a position. Your Honor, it expressly states a protest is not authorized in connection with. I mean, Congress chose a very clear line. It says with connection with issuance. That word may have a significance associated with its plain meaning. It says with issuance. Yes. I mean, if you look at a statute, I mean, it's clear that issuance does distinguish. Well, it doesn't say performance. It says issuance. And it's clear if you look at the statute. The statute itself talks about a number of things that we're dealing. And I'm talking specifically about Chapter 41, which deals with task orders and delivery orders. And Chapter 41 talks about the issuance of task orders and delivery orders. That's generally with the purpose of statute. It also talks about the award of the overarching task order contractor, what in this case would be the government-wide acquisition contract. This is a routine task to implement a previously approved procurement that's gone through the entire system. Here we're told this isn't so routine, and it's very large. Well, this is, and again, Congress has chosen to ultimately place a task order. The size doesn't matter. The statute says nothing about the size of a procurement except, again, to provide, if it's over $10 million, that it's reviewable at GAO, and that enhanced competition procedures are required for any award of a task order over $5 million. Can I ask you, I think you said, but even if you didn't say, suppose you have a task order that's within the scope of the master contract. Scope hasn't changed, so you don't have any disparity there. Nevertheless, I think you indicate, or I guess I want to know whether you think there are some challenges related to or in connection with the task order that might not be challenges in connection with the issuance of the task order, and can you help define that line? There was a good example, although I don't think the, I'm sorry, his reasoning was correct, but a good example would be Unisys. In the Unisys case, that dealt with the CEQA override issue, and what happens is when you go to GAO, you automatically get, by a matter of statute, if you've timely filed a protest, you automatically get a stay of performance or award of a contract. That happens as a matter of law. However, an agency can choose to override that stay. An agency can issue a document subject to certain standards and subject to judicial review that it overrides the CEQA stay and then can proceed forward with its contract or task order. In the Court of Federal Claims, the Court of Federal Claims, and this Court is held in Ramport, the Court of Federal Claims can review those override decisions. So maybe one way of saying that is that the execution of the task order might be different from the issuance of it. Well, it's not so much about the execution of the task order. It's in that specific instance. What the Court is reviewing is the violation of the CEQA stay provisions. It's not reviewing the issuance of the task order. And presumably what would be being sought by the challenger is not undoing the issuance. Exactly. What it's seeking in that particular instance is it's seeking to have the stay back in effect that it normally would have at GAO. To give it time to do whatever it's doing outside the Court to try to undo it. And that we would assert is correctly decided. Unisys in that sense. Thank you. May it please the Court. I'll be brief, Your Honors. SRA's case depends largely on separating the waiver of the OCI from the underlying issuance or proposed issuance of the task or delivery order. I think that the Court's decision in the Turner Construction case, dealing specifically with OCI's and government contracting officers' investigations of OCI's, shows a direct equivalence between an investigation of an OCI prior to an award and a later investigation of an OCI in turn. Can you address the question we were discussing, Sam, about what, if any, alternative judicial review mechanisms there are for anything you might put under the heading of egregious misconduct in the issuing of a task order? If the challenge, Your Honor, is in connection with the issuance or proposed issuance of a task order, there is no judicial bid protest jurisdiction. The only bid protest jurisdiction would be before the Government Accountability Office or, as counsel for the government says, the ombudsman at the agency. But there would be no judicial bid protest jurisdiction. And egregiousness, really? Egregiousness is irrelevant, Your Honor. At least the kind of thing that I was talking about is right at the heartland of issuance anyway. It's not distinct from issue. That's true, Your Honor. Now, when Congress passed the statute, the 2008 National Defense Authorization Act, reenactment and extension of the facet bar on this bid protest jurisdiction, they included a sunset provision, a three-year sunset provision, which eventually was lifted at the end of the sunset period. But Congress included the sunset provision specifically so that they could look at how the statute works and confirm that that's what they intended. At the end of the three-year period, they reset the statute separately for civilian agencies in the Defense Department in 2011-2012. Congress presumably meant what it said when it passed those statutes, when it re-upped after the sunset provision. And that seems to be the congressional intent. Thank you. Thank you. FDIC was bent on proceeding with the contract to CSC without regard to violations of law regulation. Protesting or taking some action to GAO so that they could recommend some different action wasn't going to change. This is all about agency discretion. And in each of these cases, it's going to involve agencies breaking their own rules. And the government tells us that's fine. There's no remedy in any court. You could talk to the ombudsman. Maybe we'll debar somebody. We might even throw somebody in jail. But no one can contest that. And that's just simply not consistent with any reasonable reading of the responsibility to reconcile the broad grant of jurisdiction under ADRA and the narrow exclusion under FASFA. If it can be read in that way so that it doesn't do the harm that your honors are talking about, where bribery can go unchallenged. But even under your view, you still draw a distinction. You still concede that if you had known and brought these waiver, these conflict charges before issuance, then it would have been, review would have been foreclosed under FASFA. So even you agree that in a certain set of circumstances which are characterized as egregious misconduct or whatever, that it is correct that Congress foreclosed judicial review, right? I'm not certain what the outcome would be, your honor, because there's overlap of the exclusion of jurisdiction under FASFA. And the third prong of jurisdiction under ADRA may cover the entire level of procurement. I don't know. That's a much harder question, your honor. But it's not our facts here. Here we know that 102 days after award, the government learned both of the OCI and the separate violations of conflict of interest and ethics regulations of FDIC. It learned about those after it issued an award. And then 102 days later, it made a decision. It said, we're worried that we might have to continue to contract with SRA if we lose this thing. We violated laws. We violated regulations. But we're going to do it because we don't want SRA. We want CSC. And that's just, it can't be left to the government's hands to make those determinations, your honor. Okay. Thank you. And we thank both counsel for cases submitted.